IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MELVIN L. SAULSBERRY, II,
Plaintiff,

vs. Case No.: 3:12cv167/LAC/EMT

D. KENT and
C. ROBARDS,[1]
Defendants.
_______________________________/

**ORDER and REPORT AND RECOMMENDATION**

This prisoner civil rights case is before the court upon Defendants' Motion to Dismiss with Prejudice, based upon Plaintiff's failure to exhaust administrative remedies (doc. 28). Plaintiff responded in opposition to the motion (doc. 32).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration, the undersigned concludes that Defendants' motion should be granted and this case dismissed.

I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an inmate of the Florida Department of Corrections proceeding pro se, commenced this action on or about April 4, 2012, by filing a civil rights complaint under 42 U.S.C. § 1983 (doc. 1). Now pending is Plaintiff's Second Amended Complaint (doc. 11). Plaintiff sues Donna Kent and Curtis Robards, two licensed practical nurses at the Blackwater River Correctional Facility, claiming they denied him adequate medical treatment for a perforated intestine and peritonitis in August of 2011, in violation of the Eighth Amendment (*see* doc. 11 at 4–6; *see also* doc. 32, Affidavit of Melvin

[1] Plaintiff spelled Defendant Robards' surname as "Robarb," instead of the correct spelling, "Robards." The clerk will be directed to correct the misspelling, as the court has already done in the caption of this Order and Report and Recommendation.

L. Saulsberry, II ¶ 1). Plaintiff seeks compensatory and punitive damages, as well as injunctive relief (*id.* at 6).

Defendants waived formal service of process (docs. 23, 24), and on November 26, 2012, filed a joint motion to dismiss under 42 U.S.C. § 1997(e)(a), arguing that Plaintiff failed to properly exhaust his administrative remedies before filing this lawsuit (doc. 28). Defendants contend no further administrative remedies are available; therefore, Plaintiff's claim is procedurally defaulted and his complaint should be dismissed with prejudice (*id.*). Defendants submitted an affidavit and documentation in support of their exhaustion argument (*id.*). The court provided Plaintiff an opportunity to develop the factual record regarding the exhaustion issue (doc. 29). Plaintiff responded in opposition to Defendants' motion, and submitted supporting affidavits (doc. 32). The court additionally notes Plaintiff attached copies of administrative grievances to his original complaint (doc. 1, Exhibits).

## II. LEGAL STANDARDS

Title 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *See* Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also* Porter v. Nussle, 534 U.S. 516, 524–25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); Parzyck v. Prison Health Serv., Inc., 627 F.3d 1215, 1217 (11th Cir. 2010). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *See* Porter, 534 U.S. at 524. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See* Booth, *supra* at 734. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *Id.* at 741 n.6; McCarthy v. Madigan, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291

(1992) ("Where Congress specifically mandates, exhaustion is required."); Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998).

The law of the Eleventh Circuit is clear that the PLRA's exhaustion requirement requires proper exhaustion through the administrative grievance procedure created by the agency (the Florida DOC), including compliance with the agency's deadlines and other critical procedural rules. *See* Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that § 1997e(a)'s exhaustion requirement contains "a procedural default component"—that is, prisoners must timely meet the deadlines or the good cause standard of administrative grievance procedures before filing a federal claim, and stating that without "the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies"); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (holding that "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit"); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (holding that a prisoner did not exhaust available administrative remedies where he filed an untimely grievance without seeking leave, and failed to appeal the denial of his grievance); *accord* Woodford, 548 U.S. at 94 ("Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."); Woodford, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings).

The grievance procedures promulgated by the Florida DOC require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary ("Central Office"). *See* Fla. Admin. Code rr. 33-103.005 to 33-103.007; *see also* Parzyck, 627 F.3d at 1218. If an inmate

is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance, submitted on Form DC1-303, at the institutional level. *See* Fla. Admin. Code rr. 33-103.006(1), (3)(e), 33-103.008, 33-103.019. If the inmate is dissatisfied with the result of the medical formal grievance (for example, if it is denied), the inmate is authorized to appeal to the Central Office. *Id.* at r. 33-103.007(1). If an inmate is filing an emergency grievance, a grievance of retaliation, known as a "Grievance of Reprisal," or a grievance of a sensitive nature, he may bypass use of informal and formal grievances and begin his complaint with a direct grievance to the Central Office. *Id.* at r. 33-103.007(6)(a). If an inmate files a direct grievance with the Central Office, he must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the formal grievance step of the institution. *Id.* Upon receipt of the direct grievance by the Central Office and following review of the grievance, if it is determined that the grievance is not an emergency grievance, grievance of reprisal, or grievance of a sensitive nature, the grievance must be returned to the inmate with the reasons for return specified and an advisement that the inmate resubmit his grievance at the appropriate level. *Id.*

The Florida DOC's grievance procedures also establish time frames for inmates to file grievances. In the case of a grievance of a medical nature, the formal grievance must be received no later than fifteen (15) calendar days from the date on which the incident or action being grieved occurred. *See* Fla. Admin. Code rr. 33-103.011(1)(b). Direct grievances to the Central Office must also be received within fifteen (15) calendar days from the date on which the incident or action being grieved occurred. *See* Fla. Admin. Code rr. 33-103.011(1)(d). The grievance procedure provides for an extension of the time frames as follows:

> (2) An extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in Rule 33-103.014, F.A.C.

Fla. Admin. Code rr. 33-103.011(2). The deficiencies cited in Rule 33-103.014 include:

> (d) The formal grievance was not received within 15 calendar days of the date of the response to the informal grievance;

> (e) The formal grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred, if an informal grievance was not filed pursuant to subsection 33-103.006(3), F.A.C.;
>
> (f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.
>
> (g) The grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C., or the formal grievance and response, except as provided for in subsection 33-103.007(6), F.A.C.;
>
> . . . .
>
> (m) The inmate has used multiple copies of grievance forms rather than attachments as continuation sheets.

Fla. Admin. Code rr. 33-103.014(1). An inmate who has a grievance returned to him for reasons stated in subsections (f), (g), or (m) may re-file utilizing the proper procedure or correct the stated deficiency and re-file if upon receipt of the notification the filing is within allowable time frames. *Id.* r. 33-103.014(2). When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order for him to receive administrative review of his complaint he must correct the defects and re-submit the grievance within the time frames set forth in r. 33-103.011, unless instructed otherwise in the grievance response. *Id.*

In Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust. The court held that the defense of failure to exhaust should be treated as a matter in abatement and not an adjudication on the merits. *Id*. at 1374–75. “This means that procedurally the defense is treated ‘like a defense for lack of jurisdiction,’ although it is not a jurisdictional matter.” Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting Bryant, 530 F.3d at 1374). Because exhaustion is a matter in abatement, “it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.” Bryant, 530 F.3d at 1374–75 (citation and internal quotation omitted). Where exhaustion is treated as a matter in abatement and not an adjudication in the merits, it is proper for the district court to consider facts outside of the pleadings and resolve factual disputes so long as the

factual disputes do not decide the merits, and the parties have sufficient opportunity to develop a record. *Id.* at 1376.

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. Turner, 541 F.3d at 1082. First, the court looks to the factual allegations in Defendants' motion, and those in Plaintiff's response, if any. *Id*. If they conflict, the court accepts Plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also* Bryant, 530 F.3d at 1373–74. If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

The Bryant court noted that it decided only the case before it: one where dismissal was without prejudice and where neither party evidenced that administrative remedies were absolutely time barred or otherwise "clearly infeasible." 530 F.3d at 1375 n.11. The court clarified, "We do not mean to say today that a failure to exhaust can never correctly result in a dismissal with prejudice." *Id.* (citing Johnson, 418 F.3d at 1157, 1159) and Berry v. Kerik, 366 F.3d 85, 87–88 (2d Cir. 2004) (indicating that dismissal with prejudice would be appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust")).

III. ANALYSIS

Based upon the parties' submissions, the undersigned makes the following factual findings. Defendants' conduct underlying this § 1983 action occurred on August 8, 2011, when Plaintiff declared a medical emergency, and Defendants were allegedly deliberately indifferent to his serious medical needs (*see* doc. 32, Saulsberry Aff. ¶ 1). Plaintiff returned from a local hospital to the institutional infirmary on August 14, 2011 (*id.*, ¶ 2). While Plaintiff was in the institutional infirmary, from August 14–25, 2011, he requested informal and formal grievance forms (*see id. , see also* doc. 32, Affidavit of Henry DuHart). Grievance forms and ink pens were not available to Plaintiff while

he was in the infirmary (*id.*). On August 25, 2011, when Plaintiff returned to the general population, he requested informal and formal grievances forms, Form DC6-236 and Form DC1-303, respectively, but was told by a correctional officer that forms were not currently available, and he would have to wait until the forms were available (doc. 32, Saulsberry Aff. ¶ 3). On September 11, 2011, Plaintiff obtained two informal grievances forms, Form DC6-236, from another inmate (*id.*, ¶ 4). He filed two informal grievances relating to his medication and his food tray (*id.*; *see also* doc. 28, Exs. 7, 8). On September 15, 2011, Plaintiff was able to obtain informal and formal grievances forms from the officer station (doc. 32, Saulsberry Aff. ¶ 4).

On September 23, 2011, Plaintiff filed a direct grievance to the Central Office, Log #11-6-29971, which was received on October 4, 2011 (doc. 32, Saulsberry Aff. ¶ 6; doc. 1, Ex. B; doc. 28, Ex. 2). In the direct grievance, Plaintiff stated the grievance concerned inadequate medical treatment he received on August 8, 2011, which could have resulted in permanent disability or death (doc. 1, Ex. B). Plaintiff stated, "I had to procrastinate in writing this grievance due to my slow recovery" (*id.*). Plaintiff requested an immediate investigation of the incident and implementation of procedures to prevent similar incidents in the future (*id.*). Plaintiff stated he was not providing names of witnesses to avoid retaliation or harassment (*id.*). On or about October 6, 2011, the Central Office returned the grievance without action for the following reasons:

> Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.
>
> You have used multiple copies of grievance forms rather than attachments as continuation sheets. Note: Chapter 33-103.007(2)(b), states in part, "If additional space is needed, the inmate shall use attachments rather than multiple copies of form DC1-303."
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.

(doc. 28, Ex. 2; doc. 32, Saulsberry Aff. ¶ 7).

On October 14, 2011, Plaintiff filed another direct grievance to the Central Office, Log #11-6-31813, which was received on October 21, 2011 (doc. 32, Saulsberry Aff. ¶ 8; doc. 1, Ex. C; doc. 28, Ex. 3). Plaintiff corrected the "continuation sheet" deficiency and stated he was filing the direct grievance as a grievance of a sensitive nature because he feared reprisal (doc. 1, Ex. C). He then repeated the allegations of his first direct grievance regarding the deprivation of medical treatment on August 8, 2011 (*id.*). On or about October 24, 2011, the Central Office returned the grievance without action for the following reasons:

> Note: This grievance is not accepted as a grievance of a sensitive nature.
>
> Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.
>
> The institution should be given the opportunity to respond to your issue.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.

(doc. 28, Ex. 3; doc. 32, Saulsberry Aff. ¶ 8).

On November 1, 2011, the date Plaintiff received the Central Office's response, he filed a formal grievance at the institutional level, Log #11-11-185-002, which was received on November 2, 2011 (doc. 32, Saulsberry Aff. ¶ 10; doc. 1, Ex. D; doc. 28, Ex. 4). In the formal grievance, he stated he had attempted to grieve the issue directly with the Central Office as a grievance of a sensitive nature in Log ##11-6-29971 and 11-6-31813, but the grievances were returned without action (doc. 1, Ex. D; doc. 28, Ex. 4). Plaintiff stated he received the second returned grievance and response through the institutional mail on November 1, 2011 (*id.*). He stated his formal grievance was against the medical department concerning an incident on August 8, 2011, in which he was denied necessary emergency medical care (*id.*). Plaintiff repeated the allegations he had included in his direct grievances to the Central Office (*id.*). On or about November 2, 2011, the institutional grievance coordinator and the warden returned Plaintiff's grievance without processing on the ground

that the grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred, as required by r. 33-103.014(1)(e) (*id.*).

On November 4, 2011, Plaintiff re-filed his formal grievance at the institutional level, Log #11-11-185-012, which was received on November 7, 2011 (doc. 1, Ex. E; doc. 28, Ex. 5). In the grievance, he stated he had been in the hospital and the institutional infirmary until August 25, 2011 (*id.*). Plaintiff recounted the history of the grievances he previously filed and that had been returned without action (*id.*). He stated he did not timely file his complaint within 15 days of the incident due to the extraordinary circumstances of (1) being in the hospital from August 8–20, 2011, and then in the infirmary, (2) being placed in several dorms thereafter, and (3) not having access to the law library or proper forms to file his formal grievance (*id.*). Plaintiff cited r. 33-103.011(2), which, as previously noted, provides that an extension of time limits for filing grievances "shall be granted it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner" (*id.*). On or about November 7, 2011, the institutional grievance coordinator and the warden returned Plaintiff's grievance without processing on the following grounds:

> 1. Per Chapter 33-103.014(1)(n) a decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it.
>
> 2. You did not provide any documentation of returned paperwork from Tallhassee [sic] where you were granted any additional time to file at the facility level.
>
> 3. Documentation shows you did have access to the proper forms and information to file within the time frames set forth in Chapter 33. Grievance log review indicates you filed an informal grievance in September on 9/27/11 (20 days from the date you indicated your medical emergency took place), and two formal grievances in the month of October, one was received on 10/7/11 and another on 10/10/11.

(doc. 1, Ex. E). On November 8, 2011, Plaintiff filed an appeal to the Central Office, Log #11-6-35849, which was received November 28, 2011 (doc. 32, Saulsberry Aff. ¶ 11; doc. 1, Ex. F; doc. 28, Ex. 6). The Central Office returned the grievance without action on the ground that his appeal was not in compliance with the grievance procedure, because his grievance at the institutional level was

determined to be in non-compliance with the requirements of the rules (doc. 1, Ex. F; doc. 28, Ex. 6).

These facts demonstrate that Plaintiff knew, upon receiving the Central Office's response to his first direct grievance, that the issue he wished to grieve did not qualify for consideration as a direct grievance to the Central Office, and to properly grieve the issue, he must file a formal grievance at the institutional level. At that point in time, formal grievance forms were available; indeed, Plaintiff admits they were available as early as September 15, 2011. Plaintiff also knew, by virtue of the Central Office's response, that the administrative rule governing time frames for filing grievances applied, Rule 33-103, including 33-103.011(2), the provision providing for extension of time limits in certain circumstances (Plaintiff cited this provision in his November 4 formal grievance). Instead of following the proper procedure by filing a formal grievance and including facts showing he was entitled to an extension of time for doing so, Plaintiff improperly re-filed a direct grievance with the Central Office on October 14, 2011. Although Plaintiff eventually heeded the directives of the Central Office and filed a formal grievance, upon his receipt of the Central Office's denial of his second direct grievance, he did not allege in his formal grievance that it was not feasible to file the formal grievance within 15 days from the date of the incident or that he had made a good faith effort to file in a timely manner; he alleged only that he had file two direct grievances with the Central Office, and those grievances had been returned. The institution thus properly denied the formal grievance as untimely. Although Plaintiff attempted to cure the noncompliance by filing another formal grievance and requesting an extension of time due to his time in the hospital and infirmary and lack of access to forms, he failed to satisfy the standard for granting an extension of the deadline, because he could not show either (1) filing a formal grievance earlier was not feasible or (2) he had made a good faith effort to file a formal grievance earlier.[2] Therefore, the institution properly returned the grievance without action, and the Central Office agreed with this determination.

[2] The response to the second formal grievance incorrectly stated, ". . . you filed an informal grievance in September on 9/27/11 (20 days from the date you indicated your medical emergency took place)." In fact, Plaintiff had stated his medical emergency took place August 8, 2011 (*see* doc. 1, Ex. E; doc. 28, Ex. 5). However, this factual error did not affect the correctness of the conclusion that Plaintiff had access to the proper forms to file a formal grievance sooner than November 1, the date he filed his first formal grievance.

Defendants have satisfied their burden of proving Plaintiff failed to properly exhaust available administrative remedies prior to filing his federal lawsuit. Further, the institution and the Central Office's rejection of Plaintiff's requests to accept his untimely formal grievances demonstrate that any future attempt to exhaust would be absolutely time-barred. Therefore, Defendants' motion should be granted, and this action dismissed with prejudice, pursuant to 42 U.S.C. 1997e(a). *See* Johnson, 418 F.3d at 1159 (failure of inmate to timely grieve defendants' conduct required dismissal of federal suit with prejudice, when inmate did not follow internal grievance procedure initially, and upon inmate's subsequent filing of an out-of-time grievance, prison administrators found no grounds or good cause to authorize untimely grievance); *see also* Bryant, 530 F.3d at 1375 n.11; *see also, e.g.*, Mason v. Bridger, 261 F. App'x 225, 229 (11th Cir. 2008) (affirming district court's grant of summary judgment in favor of defendants where inmate failed to properly exhaust all available administrative remedies; inmate not only filed untimely grievances without alleging good cause for doing so, but also failed to appeal the denials of those grievances); Lambert v. United States, 198 F. App'x 835, 839–40 (11th Cir. 2006) (affirming district court's dismissal of constitutional claims as unexhausted and procedurally barred where inmate conceded he failed to file any grievances on his constitutional claims); Simpson v. Holder, 200 F. App'x 836, 840 (11th Cir. 2006) (affirming district court's dismissal of complaint with prejudice as unexhausted and procedurally defaulted where inmate never filed a timely or untimely grievance and would be time-barred from doing so under Florida administrative rules); Isaac v. Donald, 211 F. App'x 859, 862 (11th Cir. 2006) (suit under section 1983 was barred by section 1997e(a) where inmate failed to exhaust administrative remedies in a timely way, and he failed to provide prison officials with reason to excuse his delay); Ory v. McHugh, No. 5:07cv291/MCR/EMT, 2008 WL 2756463, at *6 (N.D. Fla. July 14, 2008) (dismissing case with prejudice where inmate never filed or attempted to file timely or untimely grievance and would be time-barred from doing so under Florida's administrative rules).

Accordingly, it is **ORDERED**:

The clerk shall modify the docket to reflect the correct spelling of Defendant Robards' surname, that is, "Robards" instead of "Robarb."

And it is respectfully **RECOMMENDED**:

1. That Defendants' motion (doc. 28) be **GRANTED**.

2. That this case be **DISMISSED with prejudice** for Plaintiff's failure to exhaust available administrative remedies.

3. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 30th day of January 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**